David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorney for Plaintiff
*GEORGE C. PICHON*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| GEORGE C. PICHON, | : Civil Action No.: |
| | : |
| Plaintiff, | : |
| v. | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR** |
| WELLS FARGO HOME | : **CREDIT REPORTING ACT, 15** |
| MORTGAGE; WELLS FARGO | : **U.S.C. § 1681, ET SEQ.** |
| FINANCIAL CARDS; HSBC | : |
| MORTGAGE SERVICES F/K/A | : **JURY TRIAL DEMANDED** |
| HFC/USCL;EQUIFAX | : |
| INFORMATION SERVICES, LLC, | : |
| | : |

Defendants.                :

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. GEORGE C. PICHON ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of WELLS FARGO HOME MORTGAGE ("WFHM"), WELLS FARGO FINANCIAL CARDS ("WFFC"), HSBC MORTGAGE SERVICES F/K/A HFC/USCL ("HFC"), and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (or jointly as "Defendants")

with regard to erroneously reporting derogatory credit information to national reporting agencies.

3.  Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

### JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

5.  This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

6.  Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

/ / /

## PARTIES

7.  Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.  Defendant WFHM is a corporation doing business in the State of Nevada.

9.  Defendant WFHM is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

10.  Defendant WFFC is a corporation doing business in the State of Nevada.

11.  Defendant WFFC is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

12. Defendant HFC is a corporation doing business in the State of Nevada.

13. Defendant HFC is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

14. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax

is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

15. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### GENERAL ALLEGATIONS

16. On or about 7/12/2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 10-22893-btb (the "Chapter 13" or "Bankruptcy").

17. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

18. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

19. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla*

*v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

20. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

21. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

22. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 11/06/2015.

23. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

24. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

25. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the

Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

26. The adverse information reported by Defendants was based on each Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan.  Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

27. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

28. To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA") publishes standard guidelines for reporting data called the "Metro 2 Format."

29. Courts rely on such guidance to determine furnisher liability.  *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit

reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

30. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

31. On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

32. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

33. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id.*, with the following relevant exceptions:

a. <u>Current Balance</u>

    i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id.*

   ii.   However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id.* at 6-22.

  iii.   And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id.*

b.  <u>Scheduled Monthly Payment Amount</u>:

    i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id.* at 6-21.

   ii.   However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id.* at 6-22.

  iii.   And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id.*

34. Despite the 2015 Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

35. In turn, each of the credit reporting agencies named herein, rereported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

36. To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

37. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## THE EQUIFAX VIOLATIONS

### WFHM Misreported Credit Information

### RE: Account No. 0242

38. In an Equifax credit report dated January 19, 2016, WFHM inaccurately reported that there was a "scheduled payment amount" of $179, even though Plaintiff was discharged on 11/06/2015 and no payments were due on this

account creating the materially misleading impression that a debt was still owed and due.

39. WFHM also reported past due balances from January 2014 through October 2015. This was inaccurate, since the Plaintiff performed all obligations owed to WFHM after filing Chapter 13 and obtained a discharge. Moreover, WFHM was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for WFHM to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to WFHM after filing the Chapter 13.

40. On or about March 31, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed WFHM's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by WFHM.

41. Plaintiff also requested that Equifax send a copy of the corrected consumer disclosure.

42. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

43. Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified WFHM of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

44. Alternatively, Equifax failed to notify [Furnisher] pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

45. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

46. On or about May 4, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6110039205) that WFHM and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

47. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

48. WFHM and Equifax failed to conduct a reasonable investigation and reinvestigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

49. WFHM and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

50. WFHM and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, WFHM and Equifax still inaccurately reported that there was a "scheduled payment amount" of $179, even though Plaintiff was discharged on 11/06/2015.

51. WFHM and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

52. Due to WFHM's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and, 1681e(b) and 1681i(a), respectively.

53. Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was

disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

54. Upon information and belief, Equifax also failed to include a statement that this account remained in dispute and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c)Plaintiff's continued efforts to correct WFHM's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with WFHM and Equifax were fruitless.

55. WFHM's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

56. Also as a result of WFHM's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

57. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, WFHM and Equifax failed to take

the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

## WFFC Misreported Credit Information

## RE: Account No. 1188

58. In an Equifax credit report dated January 19, 2016, WFFC inaccurately reported that it "charged off" the account on multiple occasions in every month from November 2010 to December 2015 a total of 38 times. This was inaccurate, since WFFC could only report it charged off the account once.

59. WFFC also reported an account "status" of "Charged Off". This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge. Moreover, WFFC was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for WFFC to report that the Plaintiff's was "Charged Off" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to WFFC after filing the Chapter 13.

60. On or about March 31, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed WFFC's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by WFFC.

61. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

62. Plaintiff also requested that Equifax send a copy of the corrected consumer disclosure.

63. Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified WFFC of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

64. Alternatively, Equifax failed to notify WFFC pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

65. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

66. On or about May 4, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6110039205) that WFFC and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6), and verified the account as "Updated".

67. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

68. WFFC and Equifax failed to conduct a reasonable investigation and reinvestigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

69. WFFC and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

70. WFFC and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, WFFC and Equifax still inaccurately reported that it "charged off" the account on multiple occasions from February 2010 to March 2010, ant that it remained in charged-off status notwithstanding its discharge in bankruptcy.

71. WFFC and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

72. Due to WFFC's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and, 1681e(b) and 1681i(a), respectively.

73. Equifax's rereporting of multiple charge off also constituted a violation of 15 U.S.C. § 1681g(a)(1) because its Report of Reinvestigation lacked clarity where it reported multiple charge offs on the WFFC tradeline when there could only be one indication for a charge off reported during the period in dispute, and continued rereporting the charged-off status notwithstanding the account's discharge in bankruptcy.

74. The Internal Revenue Code recognizes charge offs as discharge of indebtedness income, can give rise to multiple taxable events based on each charge off, and are therefore materially misleading to the IRS.

75. Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

76. Upon information and belief, Equifax also failed to include a statement that this account remained in dispute and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c).

77. Plaintiff's continued efforts to correct WFFC's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with WFFC and Equifax were fruitless.

78. WFFC's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

79. Also as a result of WFFC's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

80. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, WFFC and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

## **WFFC Misreported Credit Information**

## **RE: Account No. 0246**

81. In an Equifax credit report dated January 19, 2016, WFFC inaccurately reported that there was a "scheduled payment amount" of $44, even though Plaintiff was discharged on 11/06/2015 and no payments were due on this

account creating the misleading and false impression that a debt was still owed and due.

82. WFHM also reported past due balances from January 2014 through October 2015.  This was inaccurate, since the Plaintiff performed all obligations owed to WFHM after filing Chapter 13 and obtained a discharge.  Moreover, WFHM was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for WFHM to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to WFHM after filing the Chapter 13.

83. On or about March 31, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed WFFC's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by WFFC.

84. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

85. Upon receiving the Equifax Dispute Letter, Equifax timely notified WFFC of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

86. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

87. On or about May 4, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6110039205) that WFFC and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

88. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

89. WFFC and Equifax failed to conduct a reasonable investigation and reinvestigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

90. WFFC and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

91. WFFC and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, WFFC and Equifax still inaccurately reported that there was a "scheduled payment amount" of $44, even though Plaintiff was discharged on 11/06/2015.

92. WFFC and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

93. Due to WFFC's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and, 1681e(b) and 1681i(a), respectively.

94. Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

95. Upon information and belief, Equifax also failed to include a statement that this account remained in dispute and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c).

96. Plaintiff's continued efforts to correct WFFC's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with WFFC and Equifax were fruitless.

97. WFFC's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

98. Also as a result of WFFC's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

99. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, [Furnisher#1] and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

## HFC Impermissibly Pulled Plaintiff's Credit Information

100.    Plaintiff is informed and believes, and thereon alleges, that **HFC** acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's "consumer report" as that term is defined by 15 U.S.C. 1681a(d)(1).

101.    Upon review of Plaintiff's Equifax credit report dated January 19, 2016, Plaintiff discovered that **HFC** submitted unauthorized credit report inquiries for account reviews to Equifax after the Debt to **HFC** had been discharged.

102.    Specifically, **HFC** submitted inquiries for the purpose of collection or account review on December 18, 2015.

103.    However, 15 U.S.C. §1681b delineates the ***only*** permissible uses of, or access to, consumer reports.

104.    **HFC** had no permissible use of or access to Plaintiff's consumer reports.

105.    **HFC**'s inquiry of Plaintiff's consumer report information for the purpose of collection or account review, without Plaintiff's consent and after the Debt had been discharged in Bankruptcy, falls outside the scope of any permissible use or access included in 15 U.S.C. § 1681b.

106.    Plaintiff had no account or business transaction with **HFC** at the time **HFC** requested Plaintiff's credit information since the debt to **HFC** had been extinguished through Plaintiff's bankruptcy discharge.

107.    Specifically, the inquiry by **HFC** was for a 1st mortgage that was stripped off, and thus there was no relationship at the time of the inquiry.

108.    **HFC** should not have submitted a credit report inquiry after November 6, 2015, because Plaintiff received a Bankruptcy discharge on November 6, 2015.

109.    Because Plaintiff had discharged all debts owed to **HFC** in the bankruptcy proceeding and had no other account relationship with **HFC**, **HFC** had no legitimate business need for the information.

110.    **HFC** accessed Plaintiff's credit report without consent or knowledge of Plaintiff.

111.    Obtaining a report without a permissible purpose constitutes an invasion of a legally protected interest in the confidentiality of the Plaintiff's sensitive personal information.  The harm may be intangible, but is it is very real and concrete.

112.    The prohibition on impermissible credit "pulls" is also a substantive provision, not procedural, in that it is a direct protection for the privacy of the Plaintiff's information.

113.    Accessing a consumer report without a permissible purpose would be similar to several common law torts that fall under the umbrella of invasion of privacy, such as the public disclosure of private facts or intrusion upon seclusion (in this case, intrusion on financial information).

114.    **HFC** never notified Plaintiff of the illegal and impermissible access.

115.   **HFC** obtained Plaintiff's credit report and/or credit information under false pretenses by falsely representing that the purpose of such access was for collection or account review notwithstanding that the account no longer existed.

116.   **HFC** continued to have knowledge that that the discharge order means that the Debt is no longer collectible.   However, **HFC** decided to access Plaintiff's credit information illegally.

117.   **HFC** had no legitimate business need for Plaintiff's credit report. Any debtor-creditor relationship that Plaintiff had with **HFC** was terminated upon Plaintiff's Bankruptcy discharge.

118.   **HFC** willfully and negligently violated the Fair Credit Reporting Act through its above conduct.

119.   Specifically, **HFC** violated 15 U.S.C. § 1681b by using Plaintiff's consumer report for an impermissible use that falls outside the scope of 15 U.S.C. § 1681b.

120.   Defendant's actions were willful under 15 U.S.C. §§ 1681n because Defendant was aware of the FCRA's prohibitions on impermissibly pulling consumers' credit reports. *See Doe v. Sentech Employment Services, Inc.*, E.D. Mich. May 16, 2016) (*citing Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant is

aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal.").

121.     Plaintiff suffered an invasion of a legally protected interest when Defendant accessed the Plaintiff's highly confidential personal information on the Plaintiff's credit report at a time when Defendant had no right to do so, an invasion of Plaintiff's right to privacy.  The FCRA, through 15 U.S.C. § 1681b, protects consumers like Plaintiff from this precise behavior.

122.     Plaintiff has a common law right to keep personal credit information private.  *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890).  Congress sought to further protect that right by enacting the FCRA.  Indeed, the common law tort of intrusion upon seclusion is preempted by the FCRA, and the FCRA expressly provides that Congress made the following finding: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. §1681a(4).

123.     Plaintiff was affected personally because when the Plaintiff's realized the behavior of Defendant described above (pulling the Plaintiff's credit report without any authorization), Plaintiff felt that the Plaintiff's privacy was

invaded and that the Plaintiff's personal and private information was disclosed to Defendant, who had no right to Plaintiff's private information.

124.     The injury suffered by Plaintiff is concrete because Defendant's violation of 15 U.S.C. § 1681b caused Plaintiff to suffer an invasion of privacy.  In enacting 15 U.S.C. § 1681b, Congress specifically sought to protect consumers from invasions of privacy and created restrictions on access to consumers' sensitive financial information in their credit reports.

125.     Further, Defendant increased the risk that Plaintiff will be injured if there is a data breach on Defendant's computer systems by acquiring additional highly sensitive information about Plaintiff and saving that information onto its computer system.  Data breaches are increasingly common (see, e.g., Data Breaches, Kerbs, available at http://krebsonsecurity.com/category/data-breaches/), and financial institutions like Defendant are frequent targets of cybercriminals (see, e.g., The Top 8 Largest Date Breaches in the Financial Services Industry, Association of Certified Financial Crime Specialists, available at http://www.acfcs.org/the-top-8-largest-data-breaches-in-the-financial-services-industry/).

126.     As such, Plaintiff is entitled to the remedies available under 15 U.S.C. §1681n and 15 U.S.C. § 1681o.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 *ET SEQ.* (FCRA)

127.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

128.     The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

129.     As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

130.     As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief

against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///

///

///

///

///

///

///

///

///

///

///

///

## TRIAL BY JURY

131.     Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: January 30, 2017

Respectfully submitted,
By  /s/ David H. Krieger, Esq.
David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

Attorney for Plaintiff
*GEORGE C. PICHON*